# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

**FLOQUIP, INC.**              *CIVIL NO. 6:16-0035

**VERSUS**                     *JUDGE DOHERTY

**CHEM ROCK**                  *MAGISTRATE JUDGE
**TECHNOLOGIES, ET AL.**        WHITEHURST

## REPORT AND RECOMMENDATION

Currently pending before me for Report and Recommendation are the Motion to Dismiss on Behalf of Enersciences Holdings, LLC, Enersciences Services, LLC, Enersciences, LLC (collectively, "Enersciences"), Rapid Drilling, LLC ("Rapid Drilling"), Edward Hostmann, Inc. ("EHI"), R3 Sciences ("R3"), David Manly ("Manly"), Kinda Lincoln ("Lincoln") and Scott Schroeder ("Schroeder"), filed on February 1, 2016 [rec. doc. 14]; the Motion to Remand filed by plaintiff, FloQuip, Inc. ("FloQuip"), on February 11, 2016 [rec. doc. 16], and the Motion to Dismiss on Behalf of David Trahan ("Trahan"), filed on February 12, 2016.  [rec. doc. 17].

On March 1, 2016, Enersciences, Rapid Drilling, Hostmann, R3, Manly, Lincoln and Schroeder filed opposition to the Motion to Remand.  [rec. doc. 30]. FloQuip filed opposition to Enersciences, Rapid Drilling, Hostmann, R3, Manly, Lincoln and Schroeder's Motion to Dismiss [rec. doc. 39], and Trahan's Motion to Dismiss on  [rec. doc. 40] on April 7, 2016.  Trahan filed a Reply Brief to FloQuip's

opposition on April 20, 2016.  [rec. doc. 47].  Enersciences, Rapid Drilling, EHI, R3, Manly, Lincoln and Schroeder filed a Reply to FloQuip's opposition on April 22, 2016.  [rec. doc. 49].

Oral argument was held on May 18, 2016, after which the undersigned took the motions under advisement.

For the following reasons, the undersigned recommends that plaintiff's Motion to Remand [rec. doc. 16] be **DENIED**, and the claims against Manly and Trahan should be **DISMISSED** without prejudice for lack of subject matter jurisdiction; that the Motion to Dismiss EHI, Lincoln and Schroeder pursuant to Rule 12(b)(2) [rec. doc. 14] be **GRANTED**;  that the Motion to Dismiss pursuant to Rule 12(b)(6) on Behalf of Enersciences Holdings, LLC, Enersciences Services, LLC, Enersciences, LLC, Rapid Drilling, and R3 [rec. doc. 14] be **GRANTED;** that the Motion to Dismiss pursuant to 12(b)(6) on behalf of David Manly [rec. doc. 14] be **DENIED AS MOOT**, and that the Motion to Dismiss on Behalf of Trahan [rec. doc. 17] be **DENIED AS MOOT**.

## I. Background

FloQuip, a Louisiana corporation domiciled in Lafayette Parish, Louisiana, had an open trade account with Chem Rock Technologies, Inc. ("Chem Rock"), a company formed and domiciled in the State of Texas, with a registered office in

2

Louisiana.  On August 10, 2015, Chem Rock, through its Chief Financial Officer, Kinda Lincoln ("Lincoln"), converted the open account into a promissory note (the "Note") payable to FloQuip.  The Note, in the amount of $167,446.43, was payable to FloQuip "the earlier of (i) seven (7) days following the closing of Chem Rock's Series A equity financing scheduled to occur on or before October 15, 2015, and (ii) such other date on which this note matures as a consequence of acceleration pursuant to the provisions of this note." [rec. doc. 1, Suit on Open Account, Exhibit C, ¶ 1(e)].

On October 25, 2015, FloQuip filed a Suit on Open Account against Chem Rock, in the 15th Judicial District Court for the Parish of Acadia, State of Louisiana. By letter dated November 6, 2015, Edward Hostmann, Inc. ("EHI"), notified FloQuip that Enersciences Holdings, LLC and its wholly-owned subsidiaries, including Chem Rock, Rapid Drilling, Enersciences, LLC, R3, and Enersciences Services, LLC, were going through an out-of-court orderly liquidation, and that Enersciences Holdings, LLC had engaged EHI as Chief Restructuring Officer to assist with the liquidation and wind down of operations. [First Supplemental and Amended Petition, Exhibit D].

On December 22, 2015, FloQuip filed a First Supplemental and Amended Petition, adding the Enersciences entities, Rapid Drilling, Hostmann, R3, Manly, Trahan, Lincoln, Schroeder, EHI and VFS US[1] as defendants.  FloQuip also added

---

[1]VF US was voluntarily dismissed from this lawsuit.  [rec. doc. 33].

claims for breach of contract, fraud, violations of the Louisiana Unfair Trade Practices Act, and to recover damages by piercing the corporate veil of the Enersciences defendants.

On January 11, 2016, defendants removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. The removing parties asserted that the joinder of Trahan and Manly was improper under 28 U.S.C. § 1441(b)(2) and was done for the sole purpose of defeating diversity jurisdiction.

On February 1, 2016, Enersciences, Rapid Drilling, EHI, R3, Manly, Lincoln and Schroeder filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) [rec. doc. 14] on the grounds that FloQuip has failed to state a claim against them. By the same motion, EHI, Lincoln and Schroeder seek dismissal under Rule 12(b)(2) for lack of personal jurisdiction.

On February 11, 2016, FloQuip filed a Motion to Remand [rec. doc. 16] on the grounds that there is no complete diversity of citizenship as defendants Manly and Trahan are Louisiana residents.

On February 12, 2016, Trahan filed a Motion to Dismiss [rec. doc. 17] on the grounds that the amended petition fails to state a cause of action against him.

## II. Legal Standard And Analysis

Because the Motion to Remand challenges this Court's jurisdiction over this

4

case, and consequently its authority to decide the Motion to Dismiss, the Court will first consider the Motion to Remand. *Maddox v. Integro USA, Inc.*, 2012 WL 3862355, at *1 (E.D. La. Sept. 5, 2012).

## A. Motion to Remand

The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Subsection (b) specifies that suits arising under federal law are removable without regard to the citizenship of the parties; all other suits are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied. *Id.*  Relatedly, a district court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been improperly or collusively joined to manufacture federal diversity jurisdiction.

Defendants, Manly and Trahan, assert that they have been improperly joined. The Fifth Circuit has recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood*, 385 F.3d

at 573.

Defendants do not allege that FloQuip's pleadings contained actual fraud; thus, only the second prong of the improper joinder test is at issue here. The Fifth Circuit articulated its standard for improper joinder in *Smallwood*. *Flagg v. Stryker Corp*., 819 F.3d 132, 136 (5th Cir. 2016). In *Smallwood*, the Court explained that a non-diverse party is improperly joined if the plaintiff is unable "to establish a cause of action against the non-diverse party in state court." Thus, the test for improper joinder "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant." In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. *Id*.

To answer this question, the court may either: (1) conduct a Rule 12(b)(6)-type analysis or (2) in *rare* cases, make a summary inquiry to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the instate defendant. (emphasis added). *Smallwood*, 385 F.3d at 573; *Buettner v. USA Gymnastics*, 2016 WL 2918107, at *2 (N.D. Tex. May 18, 2016).

Here, defendants argue that FloQuip has stated no cause of action against the in-state parties, Manly and Trahan. In most cases, to determine whether the plaintiff has any possibility of recovery against the non-diverse defendant, the court should conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the

6

complaint to determine whether the complaint states a claim under state law against the in-state defendant. *Flagg*, 819 F.3d at 136 (*citing Smallwood*, 385 F.3d at 573). Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. *Id*.

However, where the plaintiff's complaint has misstated or omitted discrete facts that would determine the propriety of joinder, the court may instead conduct a summary inquiry." *Id*. at *3. This inquiry is a summary judgment-like procedure that allows the court to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim under state law against a non-diverse defendant. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311 (5th Cir. 2002). Such a summary inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573.

Crucially, "[j]urisdictional facts are determined at the time of removal, not by subsequent events." *Flagg*, 819 F.3d at 137 n. 15 (*quoting Louisiana v. American Nat. Property Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014)). Thus, to determine whether a plaintiff has improperly joined a non-diverse defendant, the district court

must examine the plaintiff's possibility of recovery against that defendant *at the time of removal*. (emphasis in original). *Id*. This inquiry must be made regardless of whether the court examines the plaintiff's chance of surviving a Rule 12(b)(6) challenge or, instead, conducts a summary inquiry by piercing the pleadings. *Id*.

A court may choose to use either one of these two analyses, but it must use one and only one of them, not neither or both. *International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*, 818 F.3d. 193, 207 (5th Cir. Mar. 31, 2016). The decision to pierce the pleadings "lie[s] within the discretion of the trial court." *Smallwood*, 385 F.3d at 573.

Defendants argue that the Court should conduct a summary inquiry by piercing the pleadings. While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, the Fifth Circuit cautions that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. *Smallwood*, 385 F.3d at 573-74. "For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id*. (*citing Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)).

8

The undersigned finds that this is not case where the facts are "discrete and undisputed."  Accordingly, the Court will conduct a Rule 12(b)(6)-type analysis.

The Fifth Circuit has recently held that federal courts should use the federal pleading standard when conducting the Rule 12(b)(6)-type analysis of an improper joinder claim in a motion to remand to determine if the plaintiff has stated a claim against a non-diverse defendant.  *International Energy Ventures Management,* 818 F.3d at 208; *Buettner*, 2016 WL 2918107, at *2.  Thus, the Court must measure FloQuip's claims against defendants under that standard to determine whether Manly and Trahan were properly joined.  *International Energy Ventures Management, L.L.C.*, 818 F.3d at 208.  Specifically, the Court must consider whether FloQuip pleaded "enough facts to state a claim to relief that is plausible on its face."  *Id*. (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).

FloQuip asserts that the petition states a cause of action for fraud against Manly and Trahan.  [rec. doc. 16, p. 1].  Fraud under Louisiana law entails a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." *First American Bankcard, Inc. v. Smart Business Technology Inc*., — F.3d. —, 2016 WL 1437165, at *5 (E.D. La. Apr. 12, 2016) (*citing* LA. CIV. CODE art. 1953).  The

9

Fifth Circuit has stated the requisite elements of a fraud claim are: "(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury." *Id*. (*citing Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

Federal Rule of Civil Procedure 9(b) requires that all claims of fraud be pled with particularity, including "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id*. (*citing Tel-Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992)).   In other words, the claim, at a minimum, must set forth the "who, what, when, where, and how" of the alleged fraud.  *Max Access, Inc. v. Gee Cee Co. of LA, Inc.*, 2016 WL 454389, at *2 (E.D. La. Feb. 5, 2016) (*citing U.S. ex rel. Shupe v. Cisco Systems, Inc.*, 759 F.3d 379, 382 (5th Cir. 2014)).

Here, FloQuip's allegations of fraud are related to defendants' misrepresentations that Chem Rock's businesses were profitable and that FloQuip would be paid.  FloQuip's specific allegations as to Manly and Trahan are as follows:

> 25.   At various relevant times, David Manly and David Trahan negotiated with FloQuip, were personally involved in the selection of the labor and materials that the Enersciences defendants purchased from FloQuip, placed orders and/or provided detailed information about the products requested from FloQuip.

> 26.   At all relevant times, the Enersciences Defendants, David Manly

and David Trahan represented to Plaintiff, FloQuip, that FloQuip would be paid for the labor and materials it provided to the Enersciences Defendants at the request of David Manly and David Trahan.

29.    At all relevant times and on information and belief, David Manly, David Trahan, Kinda Lincoln and Scott Schroeder knew that the Enersciences Defendants were not financially able to pay for the labor and materials purchased from FloQuip, yet they continued to authorize purchases from FloQuip despite this inability to pay for them.

30.    FloQuip had repeated discussions with David Manly, David Trahan, Kinda Lincoln, Scott Schroeder and representatives of the Enersciences Defendants regarding payment of FloQuip's invoices, and all of these Defendants repeatedly assured FloQuip that payment was imminent.

31.    FloQuip relied on these representations to continue to provide labor and materials to the Enersciences Defendants despite the fact that the first few FloQuip invoices had not been paid.

35.    In or around September 2015, relying on the assurances of David Manly, David Trahan and Kinda Lincoln, FloQuip agreed to accept a Promissory Note in the amount of $167,446.83 from the Enersciences Defendants, representing the total outstanding invoices plus the charges for products that had been delivered to the Enersciences Defendants but had not yet been invoiced by FloQuip.

38.    In September of 2015, relying on the Promissory Note and the assurances of Kinda Lincoln, David Manly, and David Trahan that the anticipated equity financing by the investors of Enersciences was imminent, FloQuip authorized the sale of additional products to the Enersciences defendants.

43.    On information and belief, the assurances of payment made by

11

David Manly, David Trahan, Kinda Lincoln, and Scott Schroeder were false, the Defendants knew or should have known that they were false at the time they were made, and the statements were made for the purpose of inducing FloQuip to rely on the veracity of those statements so that FloQuip would keep selling to the Enersciences Defendants, and to prevent FloQuip from seeking return of the expensive pumps and other equipment that was in the possession of the Enersciences Defendants.

48.  On information and belief, this liquidation is in reality a fraud that is perpetuated by the officers and directors of the Enersciences defendants, including David Manly, David Trahan, Kinda Lincoln, Scott Schroeder, to personally benefit from the assets and profits of the Enersciences Defendants, at the expense of numerous creditors, including FloQuip.

49.  FloQuip relied to its detriment on the false representations of David Manly, David Trahan, Kinda Lincoln, Scott Schroeder, and the Enersciences Defendants to delay collection efforts and/or to recover some of its pumps and other materials from the Defendants.

51.  On information and belief, David Manly, David Trahan, Kinda Lincoln, and Scott Schroeder personally and fraudulently profited from the business ventures of the Enersciences Defendants, at the expense of FloQuip.

52.  On information and belief, David Manly, David Trahan, Kinda Lincoln, and Scott Schroeder are personally profiting from the "liquidation" of the assets of the Enersciences Defendants, at the expense of FloQuip.

53.  On information and belief, David Manly, David Trahan, Kinda Lincoln, and Scott Schroeder are all liable for damages to FloQuip for fraud and deceit in their individual capacities, and by piercing the corporate veils of the Enersciences Defendants, which the individual defendants used to perpetuate the fraud upon

12

FloQuip.

55.    On information and belief, during the time the Enersciences Defendants were purchasing goods and services from FloQuip, David Manly, David Trahan, Kinda Lincoln, and Scott Schroeder knew that the Enersciences Defendants did not have sufficient funding for these goods and services, and intentionally represented otherwise to FloQuip.

56.    On information and belief, during the time the Enersciences Defendants were purchasing goods and services from FloQuip, David Manly, David Trahan, Kinda Lincoln, and Scott Schroeder intentionally misrepresented the financial resources of the Enersciences Defendants for the purpose of defrauding FloQuip.

57.    On information and belief, all of these representations about payment were made with the intent to deceive FloQuip, while the defendants stripped Enersciences Holdings, LLC and all of its wholly and subsidiaries of all of its assets.

The undersigned has reviewed these allegations, and finds that a claim of fraud has not been adequately stated as to Manly and Trahan.  A recent unreported decision from the Eastern District of Louisiana, while not binding on this Court, is instructive. *Max Access, Inc.*, 2016 WL 454389.  There, plaintiff alleged that defendants promised to return outstanding equipment supplies and pay one lump sum to satisfy all plaintiff's claims.  Plaintiff asserted that it reasonably relied upon defendant's promises and representations to make payments and return the equipment, but defendant did not follow through, nor did it ever intend to do so.  *Id*. at *3

In finding that plaintiff's complaint failed to particularly plead the alleged

13

fraud of defendants, the Court reasoned as follows:

> The complaint provides too vague a summary of the supposedly fraudulent conduct of defendants to survive a Rule 12(b)(6) motion to dismiss. It references meetings without providing dates, names, or what occurred during the meeting – information plaintiff would likely know since its employees presumably attended. The complaint makes only vague references to misrepresentations, without stating what the misrepresentations were and who made them. Simply put, plaintiff's complaint does not sufficiently put defendants on notice of the "who, what, when, where, and how" of the fraud claim.

*Max Access, Inc.*, 2016 WL 454389, at *3.

Here, as in *Max Access, Inc.*, FloQuip made collective fraud allegations against Manly, Trahan, Lincoln and Schroeder.   When a fraud claim is asserted against multiple defendants, Rule 9(b) requires specific allegations detailing the allegedly fraudulent conduct of *each defendant.*   (emphasis in original).   *In re CLK Energy Partners, LLC*, 2010 WL 1930065, at *7 (Bankr. W.D.  La. May 12, 2010) (*citing Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1440 (N.D. Fla. 1998); *Sears v. Likens*, 912 F. 2nd 889, 893 (7th Cir. 1990)).   A complaint cannot group all defendants into "one wrongdoing monolith." *Id*. (*citing First American Bank & Trust by Levitt v. Frogel*, 726 F.Supp. 1292, 1295 (S.D. Fla. 1989) ("Where multiple defendants are involved, the complaint must distinguish among defendants and specify their respective role in the alleged fraud.").   Thus, the amended petition in this case clearly does not state enough to meet the heightened federal pleading

14

standard for fraud. *International Energy Ventures Management*, 2016 WL 1274030, at *9 n. 63 (*citing* Fed. R. Civ. P. 9(b)).

Additionally, FloQuip has not sufficiently pled any cause of action to pierce Chem Rock's corporate veil to get to Manly and Trahan.[2]  Under Louisiana choice of law rules, the law of the state of incorporation governs the determination of when to pierce the corporate veil.  *Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640, 646-47 (5th Cir. 2002); *see also NorAm Drilling Co. v. E & P Co. Intern., LLC*, 48-591 (La. App. 2 Cir. 12/11/13); 131 So.3d 926, 930 ("Louisiana courts and courts applying Louisiana law apply the law of the place of incorporation to determine fundamental issues of corporate structure.") (*citing Quickick, Inc. v. Quickick Int'l,* 304 So.2d. 402, 406 (La. App. 1st Cir. 1974) (applying law of state of incorporation to a question of alter ego liability.)).

All of the Enersciences entities were formed in the state of Texas.  Under Texas

---

[2]The promissory Note at issue contains a "Venue, Choice of Law" provision stating that "This note shall be governed by and construed in accordance with the applicable laws in the state of Louisiana."  [rec. doc. 1, Exhibit C, ¶ 9].  Defendants argue that Texas law regarding veil piercing applies to this case, while FloQuip asserts that Louisiana law applies. In support of defendants' assertion, they cite a bankruptcy case,  *In re CLK Energy Partners, LLC*, in which the court noted that while  Louisiana courts have not explicitly ruled on the appropriate choice of law for alter ego claims, the Fifth Circuit has predicted that Louisiana courts would look to the law of the state of formation.  2010 WL 1930065, at *6 (*citing Lone Star Industries, Inc. v. Redline*, 757 F.2d 1544, 1548 n. 3 (5th Cir.1985)); *In re Gulf Fleet Holdings, Inc*., 491 B.R. 747, 784 (Bankr. W.D. La. 2013) ("Under Louisiana's choice-of-law rules, the law of the state of incorporation governs a request to pierce the corporate veil.").  Based on Louisiana court precedent, I find that Texas law governs the piercing the corporate veil issue.

law, to pierce the corporate veil, and thus disregard the corporate form, a plaintiff must show that the shareholder used the corporation to "perpetrate an actual fraud primarily for the direct personal benefit of the shareholder."[3]   Tex. Bus. Orgs. Code Ann. § 21.223(b); *Chan v. Sharpe*, 2015 WL 5722833, at *4 (Tex. App. Aug. 26, 2015), *reh'g overruled* (Sept. 17, 2015), *reconsideration en banc denied* (Oct. 1, 2015), *review denied* (Jan. 8, 2016), *cert. denied sub nom. Francis Wing-Sing Chan v. Sharpe*, 136 S.Ct. 1717 (2016) (*citing Willis v. Donnelly*, 199 S.W.3d 262, 271-73 (Tex. 2006)).   FloQuip has failed to allege how Manly or Trahan, as a "holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate."

---

[3]Under Louisiana law, piercing the corporate veil is process by which courts disregard the limited liability normally afforded corporations. *Lee v. Clinical Research Center of Florida, L.C.*, 2004-0428 (La. App. 4 Cir. 11/17/04); 89 So.2d 317, 323 n. 3.  By piercing the corporate veil, courts can redress corporate misdeeds by the imposition of liability on another person or entity that would otherwise enjoy the benefits of the corporation's limited liability.  *Id.*  Traditional veil piercing cases require consideration of four or five primary factors, and then an inquiry into the "totality of the circumstances."  *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of Louisiana, Inc.*, 690 F.Supp.2d 435, 443-45 (E.D. La. 2010) (*citing Riggins v. Dixie Shoring, Inc.*, 590 So.2d 1164, 1168 (La. 1991) (considering commingling of funds, adherence to corporate formalities, under-capitalization, failure to provide separate bank accounts, and holding of regular shareholder meetings).  Piercing the corporate veil in Louisiana in order to impose the corporation's liability on the corporation's owners is a "radical remedy" and must be construed very narrowly and exercised in "exceptional circumstances."  *Rive v. Briggs of Cancun, Inc.*, 82 F. App'x. 359, 365 (5th Cir. Nov. 26, 2003).  The undersigned finds that, under Texas or Louisiana law, plaintiffs have failed to adequately plead a claim for piercing the corporate veil.

Tex. Bus. Orgs. Code Ann. § 21.223(b).  As previously stated, FloQuip has failed to sufficiently plead a cause of action for fraud against Manly or Trahan.  Further, Exhibit D of FloQuip's First Supplemental Petition for Damages shows that the senior secured creditor, *not Enersciences Holdings, LLC, Chem Rock (or any of its former employees or shareholders)*, will get all of the proceeds from liquidation of Chem Rock's assets, followed by unsecured creditors, such as FloQuip, if there are excess proceeds.  (emphasis added).

FloQuip's petitions essentially assert claims involving an open account under which Chem Rock, the debtor, bought on credit and when it was unable to pay, converted the open account to a promissory note by which it promised to pay if it received an anticipated equity financing.  When the financing fell through, Chem Rock went out of business.  Considering these facts, FloQuip's petitions fail to state a claim to relief that is plausible on its face against Manly and Trahan.

Based on the foregoing, I find that FloQuip has failed to state claims against Manly and Trahan sufficient to survive a Rule 12(b)(6) inquiry.  The First Supplemental and Amended Petition for Damages grouped the allegations against all individual defendants together without specifying their respective roles in the fraud. Additionally, the petition fails to set forth sufficient allegations to support a cause of action to pierce Chem Rock's corporate veil to hold Manly and Trahan liable.  Thus,

the Court should find that these defendants were improperly joined for the purposes of defeating diversity jurisdiction and their citizenship should be disregarded.

Accordingly, the undersigned recommends that the Motion to Remand [rec. doc. 16] be **DENIED**, and the claims against Manly and Trahan be **DISMISSED**. The undersigned further recommends that the Motion to Dismiss on Behalf of Enersciences Holdings, LLC, Enersciences Services, LLC, Enersciences, LLC (collectively, "Enersciences"), Rapid Drilling, LLC ("Rapid Drilling"), Edward Hostmann, Inc. ("EHI"), R3 Sciences ("R3"), David Manly ("Manly"), Kinda Lincoln ("Lincoln") and Scott Schroeder ("Schroeder") [rec. doc. 14] be **DENIED AS MOOT** as to David Manly and that David Trahan's Motions to Dismiss [rec. doc. 17], also be **DENIED AS MOOT**. *International Energy Ventures Management*, 818 F.3d at 210;[4] *Muhammad v. Ocwen Loan Servicing, Inc*., 2016 WL 2857509, at *3 (N.D. Tex. April 14, 2016).

## B. Motion to Dismiss under Rule 12(b)(2) on Behalf of Edward Hostmann, Inc., Kinda Lincoln and Scott Schroeder

EHI, Lincoln and Schroeder assert that this Court lacks personal jurisdiction

---

[4]After denying [plaintiff's] motion to remand (on the basis that [defendant] was improperly joined), the district court nonetheless granted [defendant's] Rule 12(b)(6) motion to dismiss, which "operate[d] as an adjudication on the merits." As we have discussed, the district court did not have jurisdiction to do so. As discussed above, once it determined that [defendant] was improperly joined, the district court effectively dismissed [plaintiff's] claims against him without prejudice. We therefore remand to the district court with instructions to vacate its grant of [defendant's] motion to dismiss his claims with prejudice: *That motion should have been denied as moot.*" (emphasis added). *International Energy Ventures Management*, 818 F.3d at 210.

over them.  A court must find that it has personal jurisdiction over a defendant before it makes any decision on the merits.  *Associated Energy Grp., LLC v. Air Cargo Germany GMBH*, 24 F.Supp.3d 602, 605 (S.D. Tex. 2014) (*citing Sinochem Intern. Co. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-31, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007) ("Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case."); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n. 2 (5th Cir. 1999) ("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.").  Accordingly, the undersigned will first address the Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

Defendants contend that FloQuip's claims against them should be dismissed because they lack sufficient contacts with Louisiana to maintain *in personam* jurisdiction.

The plaintiff has the burden of proving that the Court has personal jurisdiction over the defendant.  *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986).  In satisfying the above burden, when the jurisdictional issue is to be decided by the court on the basis of facts contained in affidavits, a party need only

present facts sufficient to constitute a *prima facie* case of personal jurisdiction.[5]

*Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over the defendant.  In a diversity action, such as this one, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the forum state's jurisdictional statute and the Due Process Clause of the Fourteenth Amendment.  *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).  Here, these two inquiries merge into one because Louisiana's long-arm statute, LA REV. STAT. § 13:3201, permits jurisdiction coterminous with the scope of the due process clause.  *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

For a court's exercise of personal jurisdiction over a nonresident defendant to be consistent with Due Process, two factors must be satisfied.  *Central Freight Lines Inc.*, 322 F.3d at 380 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95  (1945)).  First, the defendant must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state.'"  *Id*.  Second, a court's exercise of personal

---

[5]The undersigned is considering the affidavits to attached to the parties briefs solely for the purposes of deciding the personal jurisdiction issue under Rule 12(b)(2), and not the 12(b)(6) motion.  Fed. R. Civ. P. 12(d).

jurisdiction cannot "offend traditional notions of fair play and substantial justice.'"

*Central Freight Lines Inc*. at 381.

Due Process is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). This requirement ensures that a defendant will not be subject to litigation because of " 'random,' 'fortuitous,' or 'attenuated' contacts" with the forum state. *Stuart*, at 1191 (*quoting Burger King Corp. v. Rudewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985)).

Minimum contacts may result in either specific or general jurisdiction. *Central Freight Lines Inc*., 322 F.3d at 380.  General jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and "continuous and systematic" but unrelated to the instant cause of action. *Id*. at 381 (*quoting Helicoperos Nacionales de Colombia, S .A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).  In contrast, when the nonresident defendant has "purposely directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant." *Id*.

(*quoting Burger King Corp*., 471 U.S. at 472).  In some cases, "[a] single purposeful contact" may confer specific jurisdiction.  *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002).

FloQuip does not specify whether defendants should be subject to general or specific personal jurisdiction.  The Court treats plaintiff's response as arguing specific jurisdiction, because it does not argue that any contacts are "continuous and systematic."

Defendants, Lincoln and Schroeder, assert that they reside in Texas.  [rec. doc. 14, p. 9, ¶ 11].  EHI contends that is a corporation organized under Oregon law and which does not conduct business in Louisiana.  [*Id*.]

According to Lincoln's affidavit, she is a Texas resident and has no personal business in the State of Louisiana.  [rec. doc. 14, Affidavit of Kinda Lincoln ("Lincoln Affidavit")].  She states that her few contacts with Louisiana were all Enersciences-related.  She also indicates that  she has had very little communication with FloQuip, and what communications she had were after Chem Rock had already incurred debt with FloQuip, which Chem Rock ultimately was unable to pay.  Further, she states that her employment with Enersciences was terminated before it went out of business completely.

Schroeder's affidavit states that he is the CFO of Chem Rock, the Enersciences

22

companies, Rapid Drilling and R3.  [rec. doc. 14, Affidavit of Scott Schroeder ("Schroeder Affidavit")].  He indicates that his Enersciences office is in Austin, Texas.  [Schroeder Affidavit, ¶ 4].  He represents that he has no personal business in the State of Louisiana, and that the few contacts he had with Louisiana were all Enersciences-related.  He  further states that what communications he had were after Chem Rock had already incurred debt with FloQuip.

According to the Affidavit of Ed Hostmann, EHI's President, EHI was hired by Chem Rock, the Enersciences companies, and Rapid Drilling as Chief Restructuring Officer on or about October 29, 2015.  [rec. doc. 14, Affidavit of Ed Hostmann ("Hostmann Affidavit"), ¶ 1].  He further states that EHI is an Oregon Corporation with its principal place of business in Oregon and does not do business in Louisiana.  Finally, he states that EHI's few contacts with Louisiana were all Enersciences-related, and any such contacts did not occur until after EHI was employed on October 29, 2015, and did not relate to the actions complained of by FloQuip in its amended petition.

To controvert these affidavits, FloQuip submitted the affidavits of Adley J. Theriot, Vice-President of Onshore Sales for FloQuip in Lafayette, Louisiana [rec. doc. 39, Affidavit of Adley J. Theriot ("Theriot Affidavit")], and Myles J. Derouen, a mechanical engineer providing engineering consulting services through his

company, Derouen Designs [rec. doc. 39, Affidavit of Myles J. Derouen ("Derouen Affidavit")].

Theriot states that in late 2014, Chem Rock approached FloQuip in Lafayette, Louisiana, for a quote to build a portable mechanical system designed to use in treating water used in fracking activities, known as "treatment trailers." [Theriot Affidavit, ¶ 2]. He does not indicate which Chem Rock officer or employee made this initial contact.

Theriot further states that starting in December 2014, Manley and Schroeder were involved in "discussions" about the project specifications and were actively involved in the decision-making process, and both were involved in email communications with Theriot about the project. [Theriot Affidavit, ¶ 4]. He did not indicate whether these "discussions" took place in person, by telephone or email.

Additionally, Theriot states that on December 29, 2014, he attended a meeting at Linear Controls in Lafayette, at which both Manly and Schroeder personally attended. [Theriot Affidavit, ¶ 6]. He indicates that the purpose of this meeting was to discuss the computer systems that would be provided by Linear Controls to FloQuip as part of the treatment trailers that FloQuip would ultimately build for Chem Rock. [Theriot Affidavit, ¶ 7]. However, Chem Rock informed FloQuip that it wanted to use another company, Broad Point Energy ("Broad Point") of New Iberia,

Louisiana, where Schroeder worked as either the Chief Operating Officer or Chief Financial Officer.  [Theriot Affidavit, ¶¶ 9-10].

Theriot represents that on January 23, 2015, he personally met with Manly and Schroeder at Broad Point's New Iberia, Louisiana office to discuss further details of the work to be performed by Broad Point for FloQuip.  [Theriot Affidavit, ¶ 11].  He states that during this meeting, he asked that Chem Rock make a payment to FloQuip.  [Theriot Affidavit, ¶ 13].  Schroeder told Theriot to meet him at his office in Lafayette, Louisiana to review the invoices for payment.  [*Id*.].

Theriot further states that on January 24, 2015, he went to Chem Rock's offices in Lafayette, and personally observed Schroeder working in that office.  [Theriot Affidavit, ¶ 14].  He indicates that on that date, he spoke with Manly and Schroeder about FloQuip's invoices, and received a payment from Chem Rock after that meeting. [Theriot Affidavit, ¶¶ 15, 16].  He concludes that after Schroeder and Manly approved the scope of FloQuip's work, Manly was his main contact, and that he spoke with Manly several times a week from January 2015 through July 2015. [Theriot Affidavit, ¶ 17].

According to Derouen's affidavit, Derouen signed a contract with Enersciences Holdings, LLC to provide engineering drawings, diagrams and other efforts ("consulting contract").  [Derouen Affidavit, ¶ 4].  He states that pursuant to his

25

consulting contract, he worked closely with Trahan in an office and research laboratory facility located in Lafayette, Louisiana. [Derouen Affidavit, ¶ 5]. He indicates that throughout 2015, as part of his consulting work for Enersciences Holdings, LLC, he participated in meetings and had casual discussions with Trahan and other Enersciences employees on almost a daily basis. [Derouen Affidavit, ¶ 14]. He also represents that he had personally observed Lincoln working in Enersciences' Lafayette, Louisiana office on at least three occasions. [Derouen Affidavit, ¶ 16].

Based on the affidavits, I find that FloQuip has not shown that EHI, Lincoln, or Schroeder have minimum contacts with State of Louisiana sufficient to support the exercise of specific personal jurisdiction over them. FloQuip has failed to allege any contacts whatsoever between EHI and the State of Louisiana. Additionally, the exhibit attached to the petition shows that EHI was hired to liquidate Chem Rock after the company went out of business, and was not an officer or employee of Chem Rock. [First Supplemental and Amended Petition, Exhibit D].

As to Lincoln, FloQuip refers to only three contacts with Louisiana, all of which were related to Enersciences rather than Chem Rock. Although Derouen represents that he observed Lincoln working in Enersciences' Lafayette, Louisiana office on these three occasions, he does not indicate that any of the claims made by FloQuip arise out of or relate to Lincoln's alleged contacts with Louisiana.

Regarding Schroeder, the affidavits show that most of his contacts with Theriot involved an unspecified number of email communications, with only three in-person meetings in Louisiana. Like Lincoln, all of Schroeder's contacts were Enersciences-related. Accordingly, the quality, quantity and nature of the contacts which Schroeder and Lincoln had with Louisiana do not make it fair and reasonable to subject them to suit here. Such a result would subject officers of foreign corporations licensed to do business in this state to an unreasonable inconvenience and violates due process requirements of the Fourteenth Amendment to the United States Constitution absent other contacts between the nonresident corporate representative and the forum state.

The fiduciary shield doctrine holds that an individual's transaction of business within a state solely as a corporate officer does not create personal jurisdiction over that individual, though the state may have personal jurisdiction over the corporation. *Stuart v. Spademan,* 772 F.2d 1185, 1197(5th Cir. 1985). Although the general rule is that jurisdiction over a corporate officer cannot be predicated upon jurisdiction over a corporation, two exceptions to the fiduciary shield doctrine have been recognized. First, courts may disregard the corporate form and exercise jurisdiction over an individual officer if the corporation is the "alter ego" of the officer. *Stuart,* 772 F.2d at 1197. Second, the court may exercise personal jurisdiction over an

27

officer who allegedly committed an intentional tort directed at the forum state. *See e.g. D.J. Investments, Inc. V. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 546-47 (5th Cir. 1984)(jurisdiction proper because fraud and breach of contract alleged).

Here, FloQuip has failed to allege how Lincoln or Shroeder could be held personally liable through piercing the corporate veil. FloQuip has not shown how Lincoln or Shroeder, Chem Rock officers, were a "holder, beneficial owner, subscriber, or affiliate" who "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate." Tex. Bus. Orgs. Code Ann § 21.223(b).   The petition simply fails to set forth sufficient allegations to pierce Chem Rock's corporate veil to hold Lincoln or Shroeder liable.

Additionally, FloQuip's fraud claims against Lincoln and Schoeder, like similar claims made against Manly and Trahan, were not adequately pled.   As stated previously, the First Supplemental and Amended Petition for Damages grouped the allegations against all individual defendants together without specifying their respective roles in the fraud.   Thus, the petition fails to meet the requirement of Rule 9(b) of specific allegations detailing the allegedly fraudulent conduct of *each*

*defendant.*[6]

Accordingly, Shroeder's and Lincoln's contacts with Louisiana are insufficient to support the exercise of specific personal jurisdiction over them.  To do so would offend traditional notions of fair play and substantial justice.  I find that personal jurisdiction is lacking over these defendants.

Accordingly, the undersigned recommends that the Motion to Dismiss EHI, Lincoln and Schroeder pursuant to Rule 12(b)(2) be **GRANTED**, and that these defendants be **DISMISSED WITHOUT PREJUDICE**.

## C. Motion to Dismiss under Rule 12(b)(6) on Behalf of Enersciences Holdings, LLC, Enersciences Services, LLC, Enersciences, Rapid Drilling and R3

Defendants, Enersciences Holdings, LLC, Enersciences Services, LLC, Enersciences, Rapid Drilling, EHI and R3,[7] assert that FloQuip has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  In response, FloQuip argues that the factual allegations in paragraphs 27-31, 43, 48, 49, 54, 56 and 57 (cited above) support its claims for breach of contract, fraud and violations of LUTPA.[8]  [rec. doc. 39, pp. 6-8].

---

[6]The undersigned further notes that FloQuip's affidavits fail to set forth any facts which indicate that Lincoln or Schroeder contacts with Louisiana were related to or arose out of any alleged fraudulent acts in this State.

[7]This motion was also filed on behalf of defendants Manly, Lincoln, Schroeder and EHI.  The undersigned has already recommended dismissal of these defendants.

[8]Defendants argue that if, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  [rec. doc. 49, n.

### (1) Standard for Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).   The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).  However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Collins*, 224 F.3d at 498, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  The allegations must

---

1] (citing *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010)].  However, whether to proceed as a motion for summary judgment is within the discretion of the Court.  *Mackey v. Cleveland State Univ*., 837 F.Supp. 1396, 1401 (N.D. Ohio 1993) (*citing*  2A James Wm. Moore, MOORE'S FEDERAL PRACTICE § 12.09[3] (1992)).  The undersigned places no reliance on the materials which do not address the issue of personal jurisdiction.  Therefore, the matter before the Court will be treated only as a motion to dismiss, and not a motion for summary judgment.

be sufficient "to raise a right to relief above the speculative level," *id*. at 555, and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (*quoting* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*. at 547.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009) (*quoting Twombly*, 127 U.S.

at 556).

### (2) The Contentions of the Parties

#### (a) Fraud Claim

FloQuip first asserts that its petition states a cause of action for fraud as to all defendants.  [rec. doc. 39, p. 2].  In its brief, FloQuip cites the Louisiana standard for proving fraud.  To succeed on a claim for fraudulent misrepresentations under Louisiana law, the plaintiff must prove the following three elements by a preponderance of the evidence: (1) a misrepresentation, suppression or omission of true information; (2) the intent to obtain an unjust advantage or to cause to damage or inconvenience to the other party; and (3) the resulting error must relate to a circumstance substantially influencing the other party's contractual consent.  *Central Facilities Operating Co., L.L.C. v. Cinemark USA, Inc*., 36 F.Supp.3d 700, 716 (M.D. La. 2014) (*citing Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 2011-0072 (La. App. 1 Cir. 8/17/11); 76 So.3d 502, 509).

However, as stated above, the allegations of fraud are grouped together collectively.  No attempt to plead those claims with particularity has been made. Without specifying the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [he/she] obtained thereby" as to each defendant, FloQuip cannot meet the heightened federal pleading

standard for fraud.  *Tel-Phonic Services*, 975 F.2d at 1139.  Accordingly, this claim should be dismissed as to all defendants.

### (b) Breach of Contract Claim

Louisiana law defines a contract as an agreement by two or more parties whereby obligations are created, modified, or extinguished.  LA. CIVIL CODE art. 1906.  The four elements of a valid contract are that: (1) the parties possess the capacity to contract, (2) the parties' mutual consent must be freely given, (3) the contract must have a lawful cause, and (4) there must be a certain object for the contract. *Velazquez v. Brand Energy & Infrastructure Services., Inc.*, 781 F.Supp.2d 370, 375-76 (W.D. La. 2011) (*citing Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430 n. 4 (5th Cir. 1996)); LA. CIVIL CODE arts. 1918, 1927, 1966-67, 1971.

FloQuip asserts that this action was initiated because of "behavior associated with a contract between the Plaintiff, FloQuip, and defendant Chemrock." [rec. doc. 39, p. 8].  Defendants argue that FloQuip's petition fails to make specific allegations against Chem Rock's wholly-owned subsidiaries.  In response, FloQuip argues that the allegations in paragraphs 8 and 9 of the amended petition are sufficient to state a cause of action against all of the Enersciences defendants under the single business enterprise theory:

8.      At all relevant times, Defendants Chem Rock Technologies, LLC,

> Enersciences Services, LLC, Enersciences, LLC, VFS US, Rapid Drilling, LLC, and R3 Sciences, LLC were wholly owned subsidiaries of Defendant Enersciences Holdings, LLC, and are collectively referred to herein as the "Enersciences Defendants".
>
> 9.    The Enersciences Defendants constitute a single business enterprise for the purposes of imposing common liability.

[rec. doc. 39, pp. 5-6].

FloQuip asserts that Louisiana law applies to this case.  The Louisiana Supreme Court has described the single business enterprise doctrine as "a theory for imposing liability where two or more business entities act as one." *Brown v. ANA Insurance Group*, 2007-2116 (La. 10/14/08); 994 So.2d 1265, 1266 n. 2. "Generally under the doctrine, when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose." *Id*. (*citing Green v. Champion Ins. Co.*, 577 So.2d 249 (La. App. 1 Cir.), *writ denied*, 580 So.2d 668 (La. 1991)); *Andretti Sports Mktg. Louisiana, LLC v. Nola Motorsports Host Comm., Inc*., — F.Supp.3d ---, 2015 WL 7459697, at *9 (E.D. La. Nov. 24, 2015).[9]

---

[9]The following factors have been used to support an argument that a group of entities constitute a "single business enterprise" under Louisiana law: (1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; (2) common directors or officers; (3) unified administrative control of corporations whose business functions are similar or supplementary; (4) directors and officers of one corporation act independently in the interest of that corporation; (5) corporation financing another corporation; (6) inadequate capitalization ("thin incorporation"); (7) corporation causing the incorporation of another affiliated corporation; (8) corporation paying the salaries and other

Single business enterprise theory differs from traditional veil piercing in two respects. *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of Louisiana, Inc.*, 690 F.Supp.2d 435, 443-45 (E.D. La. 2010).  First, when jurisdiction is at issue, traditional veil piercing operates vertically to allow the Court to impute a corporation's contacts to its shareholders. *Id.* (*citing Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).  Although some courts use traditional veil piercing horizontally to fuse two affiliated corporations, the single business enterprise theory can be used to fuse either affiliated or unaffiliated corporations, but not to impute corporate jurisdictional contacts to shareholders.  *Id.*

Second, at least under Louisiana law, the legal standard utilized in traditional veil piercing and SBE cases is different.  *Id.*  Traditional veil piercing cases require consideration of four or five primary factors, and then an inquiry into the "totality of the circumstances."  *Id.* (*citing Riggins v. Dixie Shoring, Inc.*, 590 So.2d 1164, 1168 (La. 1991) (considering commingling of funds, adherence to corporate formalities, under-capitalization, failure to provide separate bank accounts, and holding of regular

---

expenses or losses of another corporation; (9) receiving no business other than that given to it by its affiliated corporations; (10) corporation using the property of another corporation as its own; (11) noncompliance with corporate formalities; (12) common employees; (13) services rendered by the employees of one corporation on behalf of another corporation; (14) common offices; (15) centralized accounting; (16) undocumented transfers of funds between corporations; (17) unclear allocation of profits and losses between corporations, and (18) excessive fragmentation of a single enterprise into separate corporations.  *Green*, 577 So.2d at 257-58.  These factors are similar to factors that have been used in Louisiana "piercing the veil cases."  *Id.*

shareholder meetings).

However, as set forth above,  Louisiana courts and courts applying Louisiana law apply the law of the *place of incorporation* to determine fundamental issues of corporate structure, which is Texas in this case.  (emphasis added).  *Patin*, 294 F.3d at 646-47.  The Texas Supreme Court has expressly rejected the doctrine of single business enterprise liability and held that "corporations cannot be held liable for each other's obligations merely because they are part of a single business enterprise."  *In SSP Partners v. Gladstrong Invest.*, 275 S.W.3d 444, 447 (Tex. 2008); *NorAm Drilling Co.* v. E & PCo Int'l, LLC, 131 So.3d at 928 n. 2.  Thus, plaintiffs' claim under the single business enterprise theory fails.

Accordingly, I recommend that this claim be dismissed.

### (c) LUTPA Claim

FloQuip asserts that the factual allegations of the petition support a cause of action against all defendants for violations of the LUPTA, LA. REV. STAT. § 51:1401, *et seq*., citing paragraphs 27-31, 43, 48, 49, 54, 56 and 57 of the amended petition to support this claim.  [rec. doc. 39, pp. 6-8].

The LUTPA prohibits"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  *Total Rebuild, Inc. v. Streamline Hose & Fittings, Inc*., 2015 WL 9217451, at *5 (W.D. La. Sept. 25, 2015),

objections overruled sub nom. *Total Rebuild Inc v. Streamline Hose & Fittings Inc*,
2015 WL 9237112 (W.D. La. Dec. 16, 2015); LA. REV. STAT. §51:1405. The statute
defines the word "person" to include natural persons, partnerships, or corporations,
La. R.S. 51:1402(9), and states that any person who suffers an ascertainable loss as
a result of an unfair or deceptive trade practice can maintain a cause of action under
LUTPA. *Id*.; LA. REV. STAT. § 51:1409(A); *see also Cheramie Services, Inc. v.
Shell Deepwater Production, Inc.*, 35 So.3d 1053, 1057 (La. 2010).

The elements of a cause of action under LUTPA are: (1) an unfair or deceptive
trade practice declared unlawful; (2) that impacts a consumer, business competitor,
or other person to whom the statute grants a private right of action; (3) which has
caused ascertainable loss. *Who Dat Yat LLC v. Who Dat ? Inc*., 2011 WL 39043, at
*3 (E.D. La. Jan. 4, 2011). Conduct is deemed unlawful if it involves fraud,
misrepresentation, deception, breach of fiduciary duty, or other unethical conduct.
*Core v. Martin*, 543 So.2d 619, 621 (La. App. 2nd Cir. 1989) (*citing Dufau v. Creole
Engineering, Inc.*, 465 So.2d 752, 758 (La. App. 5th Cir.), *writ denied*, 468 So.2d
1207 (La.1985)).

The statute does not specifically state what constitutes an unfair or deceptive
trade practice. *Total Rebuild, Inc.*, 2015 WL 9217451, at *6 (*citing Levine v. First
Nat. Bank of Commerce*, 2006-0394 (La. 2/16/06); 948 So.2d 1051, 1065-66).

Instead, "[i]t has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition." *Id.* (*citing Cheramie Services, Inc.*, 35 So.3d at 1059); *see also* Levine, 948 So.2d at 1065-66.   Louisiana jurisprudence explains that a trade practice is unfair when it offends established public policy and is unethical, oppressive, unscrupulous, or substantially injurious, *Levine* at 1065-66, and that a trade practice is deceptive when it amounts to fraud, deceit, or misrepresentation, see, *e.g.*, *Southern General Agency, Inc. v. Burns & Wilcox, Ltd.*, 2012 WL 3987890, at *1 (W.D. La. Sept. 11, 2012).   *See also Bartholomew Investments-A, L.L.C. v. Margulis*, 2008-0559 (La. App. 4 Cir. 9/2/09); 20 So.3d 532, 538-39, and the cases cited therein.   A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition. *Id.*   The range of practices prohibited by LUTPA is narrow, but LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions.   *Id.* (*citing Cheramie Services, Inc.*, 35 So.3d at 1060).

Here, FloQuip has not alleged sufficient facts to support a claim under LUTPA. Plaintiff has not even referred to LUTPA in its petition, let alone alleged an unfair or deceptive trade practice.   Additionally, FloQuip has not met the federal pleading requirements for asserting a claim for fraud or misrepresentation.   Accordingly, I

38

recommend that this claim be dismissed.

After a thorough review of the pleadings, the undersigned finds that this case appears to be solely a suit on open account.  Although plaintiff has made some allegations of fraud, LUTPA, single enterprise theory and piercing the corporate veil, the petition as amended fails to meet the pleading requirements under federal law.

Accordingly, the undersigned recommends that the Motion to Dismiss [rec. doc. 14] be **GRANTED**.

### III. Conclusion

Based on the foregoing reasons, the undersigned recommends that plaintiff's Motion to Remand [rec. doc. 16] be **DENIED**, and the claims against Manly and Trahan should be **DISMISSED** without prejudice for lack of subject matter jurisdiction; that the Motion to Dismiss EHI, Lincoln and Schroeder pursuant to Rule 12(b)(2) [rec. doc. 14] be **GRANTED**;  that the Motion to Dismiss pursuant to Rule 12(b)(6) on Behalf of Enersciences Holdings, LLC, Enersciences Services, LLC, Enersciences, LLC, Rapid Drilling, and R3 [rec. doc. 14] be **GRANTED**; that the Motion to Dismiss pursuant to Rule 12(b)(6) on Behalf of David Manly [rec. doc. 14] be **DENIED AS MOOT**, and that the Motion to Dismiss on Behalf of Trahan [rec. doc. 17] be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b),

parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 20th day of June, 2016, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**